Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 4898 | DATE | 3/9/2001 |
| CASE TITLE | Luciano Franzoni vs. Hartmarx Corporation, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11 Apr. 01 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion for summary judgment is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAR 1 2 2001 | | 38 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | CM | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAR -9 PM 4: 21 | date mailed notice | | |
| | WAP | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
MAR 1 2 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUCIANO FRANZONI,

    Plaintiff,

v.

HARTMARX CORPORATION, a
Delaware corporation, M. WILE
& CO. INC., a New York
corporation, and HART
SCHAFFNER & MARX, a New York
Corporation,

    Defendants.

Case No. 99 C 4898

Judge Harry D. Leinenweber

FILED

MAR - 9 2001

Judge Harry D. Leinenweber
U. S. District Court

## MEMORANDUM OPINION AND ORDER

Plaintiff Luciano Franzoni ("Franzoni") brought this action against Defendant Hartmarx Corporation and its wholly owned subsidiaries M. Wile & Co. Inc. and Hart Schaffner & Marx (collectively "Hartmarx") for age discrimination and retaliatory discharge pursuant to the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et. seq. and the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 215 (a)(3).

### BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions and are undisputed unless otherwise noted. Franzoni, an Italian fashion designer, emigrated to the United States in 1968, and he began working for Hartmarx on November 18, 1968. (Pl. Resp., ¶ 15.) His main duties were media relations and fashion consulting. (*Id.*, ¶¶ 16, 17.) In 1969, Hartmarx initiated

38

a program called "Meet Luciano Franzoni" where Franzoni would hold seminars to promote the Hartmarx line of clothing, and Franzoni performed these marketing duties for 20 years. In 1989, Hartmarx created a new clothing line using Franzoni's name, called the Confezioni Riserva Luciano Franzoni (the "Franzoni" line). (*Id.*, ¶¶ 18-20.) Franzoni was transferred from Hart Schaffner and Marx to M. Wile & Co. Inc., d/b/a International Brand Apparel ("IBA"). While at IBA, Franzoni's duties continued to consist mostly of touring, marketing, and advising the designers. (*Id.*)

In September 1997, Franzoni requested a meeting with Homi Patel, the President and Chief Operating Officer of Hartmarx. (Def. R. 56.1, ¶ 32.) At the meeting, Franzoni presented Patel with a memorandum requesting additional compensation. (Pl. Resp., ¶ 33.) The parties dispute the precise content of the conversation that followed. According to Franzoni, Patel, referring to an employment history sheet that he had requested from the personnel office, specifically noted Franzoni's birth date and start date with the company. (Pl. Resp., ¶ 39.) Next, Patel stated that he always thought Franzoni was younger and complimented Franzoni on looking good for his age. (Def. R. 56.1, ¶ 39.) Then, according to Franzoni, "without further discussion, Mr. Patel then stated that it was time for me to retire," (Pl. Resp., ¶ 39), and that Franzoni's retirement would coincide with his 30th anniversary with the company, *i.e.*, occur on November 18, 1998. (Pl. Resp.,

Additional Facts, ¶ 13.) Franzoni believed that Patel was ordering him to retire. (Def. R. 56.1, ¶ 38.) According to Franzoni, the "sole and only explanation" given to him for "requiring" that he retire was that he was then 71 years old. (Pl. Resp., ¶ 39.)

Hartmarx paints a somewhat different picture. First, Hartmarx claims that Patel regularly obtained information on employees in preparation for a meeting. (Def. R. 56.1, ¶ 33.) According to Hartmarx, Patel told Franzoni that the clothing line was not doing well and that if the company should decide to discontinue the line there would be no position for Franzoni. Patel claims that Franzoni suggested retiring on his 30th anniversary with the company. (Def. R. 56.1, ¶ 36.) Patel told Franzoni to negotiate his retirement package with Joseph Conti, the president of IBA. (Def. R. 56.1, ¶¶ 41, 42.)

Patel summarized the meeting with Franzoni in a memorandum to Conti and another IBA employee: "The meeting took a somewhat different turn than Luciano had anticipated. We came to the conclusion that it was an appropriate time to be discussing Luciano's retirement. On November 18, 1998, Luciano will have completed 30 years of service, and will be 72 ½ years old. We agreed that after 30 years of service, Luciano would retire at the end of 1998." (Plaintiff's Ex. Z.) Patel concludes the memo with a request that Conti "put in writing the fact that [Franzoni] will be retiring at the end of 1998." (*Id.*)

On April 27, 1998, Conti sent Franzoni a finalized version of the retirement package. (Def. R. 56.1, ¶ 43.) The agreement stated that Franzoni "indicated that [he] will retire from active employment on or about November 18, 1998." (*Id.*) Franzoni refused to sign the agreement. (*Id.*, at ¶ 47.) In early June 1998, Franzoni told Conti that he did not want to retire and that he had filed an age discrimination charge with the Equal Employment Opportunity Commission. (*Id.*) On July 1, 1998, Franzoni was informed that IBA had continued with its plans to eliminate Franzoni's position. (Pl. Resp., Additional Facts, ¶ 21.)

Patel subsequently requested that Kenneth Hoffman ("Hoffman"), the Chairman and Chief Executive Officer of Hart Schaffer & Marx ("HSM"), find Franzoni a position at HSM. (Def. R. 56.1, ¶ 56; Pl. Resp., ¶ 56.) Hoffman found Franzoni a quality control position in HSM's factory in Des Plaines, Illinois. (Def. R. 56.1, ¶ 57.) According to Franzoni, this new position was a demotion in retaliation for his complaint with the EEOC. (See Pl. Memo, p. 6) While the parties dispute the working conditions of Franzoni's job at the Des Plaines facility, it is undisputed is that Franzoni's new position required him to stand.

On August 22, 1998, Franzoni left work because of pain in his feet and went to the hospital. (Def. Rep., ¶ 39.) Franzoni had been previously diagnosed with bilateral Achilles and plantar spurs. (Def. Rep. ¶ 32, 35.) That was his last day of work.

Franzoni's doctors stated that he could work in any capacity that did not require him to stand for extended periods. (Def. Ex. R.) Franzoni's then attorney requested that HSM accommodate his needs and return him to work. (Def. Rep. ¶ 41.) On August 28, 1998, HSM placed Franzoni on medical leave under the Family and Medical Leave Act ("FMLA"). (*Id.*) Franzoni claims that he was put on FMLA leave involuntarily. (Pl. Resp., ¶ 42.)

On September 4, 1998, and October 10, 1998, Franzoni wrote to his supervisor explaining that the pain in his feet was still present. (Pl. Resp., ¶¶ 70, 71.) On September 15, 1998, Franzoni filed a worker's compensation claim alleging that the deterioration of his feet was permanent. (Def. R. 56.1, ¶ 73.) HSM's workers' compensation insurance carrier conducted an investigation of Franzoni's claim and made some videotapes of Franzoni. According to Hartmarx, the video showed Franzoni taking a long walk and a shorter walk without an apparent pain or discomfort. (Def. R. 56.1, ¶ 75.) Ronnie Robinson, HSM's senior vice president of human resources and administration, reviewed the videotape, and thought that Franzoni had lied in his letters that stated he was unable to work. On December 8, 1998, Robinson sent Franzoni a letter stating that his position was terminated because he made "false and misleading statements" about his medical condition. (Def. R. 56.1, ¶ 82.)

Among other actions in other courts, Franzoni filed a complaint with this Court alleging age discrimination and retaliation with respect to the elimination of his position at IBA, his transfer to the Des Plaines facility, and his termination from the position at the Des Plaines facility.

## **DISCUSSION**

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). This standard principle of summary judgment must be applied with "added rigor" in employment discrimination cases because they often turn on intent and credibility. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 714 (7th Cir. 1999).

To defeat a motion for summary judgment, the non-moving party may not rest on its pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Espo*, 200 F.3d at 1088. In order to prevail on any of his claims Franzoni must show that the

adverse employment action would not have occurred "but for" his employer's age-based discrimination or retaliatory motive. *Pitasi*, 184 F.3d at 714.

### Age Discrimination Claims - Direct Evidence

Direct evidence is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999). When the evidence consists of isolated statements, the plaintiff must show that those remarks were related to the employment decision in question. In order for the evidence to be related to the employment decision in question, the plaintiff must be able to show that the person with the discriminatory animus was the decision-maker. *See, id.* at 312 ("direct evidence relates to the motivation of the decision-maker responsible for the contested decision").

Franzoni's direct evidence claim rests solely on the conversation that he had with Patel on or about September 4, 1997. The parties give slightly different versions of this conversation, and for purposes of this motion, the Court will use Franzoni's version. Franzoni claims that Patel looked at some documents and said that Franzoni was 71 years old and looked very good for his age. Patel noted that, based on the employment documents, Franzoni was hired on November 18, 1968, that November 18, 1998 marked 30 years with the company, and that at that time Franzoni must retire.

- 7 -

(Plaintiff's 56.1, at 13, 14.) Patel next told Franzoni that "with the discontinuation of the program, I don't believe there is a job for you." (*Id.* at 15.) Franzoni testified that he believed that Patel, his superior, had ordered him to retire and that Patel's decision was motivated by Franzoni's age. (*Id.* at 16.) Franzoni had no prior warning or any previous conversation with any supervisor at Hartmarx regarding his continued employment. Further, Patel memorialized his conversation with Franzoni in a memo where he stated that the meeting:

> took a somewhat different turn than Luciano had anticipated. We came to the conclusion that it was an appropriate time to be discussing Luciano's retirement. On November 18, 1998, Luciano will have completed 30 years of service, and will be 72 1/2 years old. We agreed that after 30 years of service, Luciano would retire at the end of 1998.

(Ex. Z.)

Based on this conversation, IBA proceeded to create a separation package based on Patel's statements that Franzoni would retire in November 1998. On April 27, 1998, IBA sent Franzoni a letter agreement executed by Joseph Conti confirming the retirement plan, but Franzoni did not sign the agreement. On June 5, 1998, Franzoni filed an age discrimination charge with the EEOC.

Between the time that Patel and Franzoni first spoke about Franzoni's retirement and the time when Franzoni refused to sign the letter agreement, IBA made plans to eliminate Franzoni's

position. After Franzoni announced that he was not going to retire, IBA continued with its plans to eliminate his position, and less than a month later Franzoni's job was eliminated.

References to an employee's years of service are not necessarily directed at an employee's age because an employee's years of service are analytically distinct from the employee's age. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-612 (1993). Further, the suggestion that an employee retire "[is] not necessarily a reference to the employee's age." *Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir. 1999). The Seventh Circuit "[has] made clear that neither retirement nor offers of early-retirement incentives support an inference of age discrimination and that it is the conditions surrounding the offer . . . that count." *Pitasi*, 184 F.3d at 715, fn.7 (explaining that "retirement was suggested, not because of any wrongdoing on [the employee's] part, but as an option, a benefit to make more palatable his dismissal during a reduction-in-force."). Furthermore, in order for remarks about an employee's age to serve as direct evidence of discriminatory intent, they must be made by the decision maker. *Holloway*, 180 F.3d at 825.

Here, it is undisputed that both Franzoni's age and years of service were discussed during his conversation with Patel. A reasonable jury could find that Franzoni's age was a factor the decision to eliminate his job and to forcing him to retire. The

issue turns on Patel's intent and credibility, which are questions for a jury to decide, not for the Court. Hartmarx has not set forth any evidence demonstrating that prior to Franzoni's meeting with Patel, the decision had been made to eliminate his position. Thus, Franzoni has submitted sufficient evidence for his direct discrimination claim.

## Age Discrimination Claims - Indirect Evidence

Franzoni also proceeds under the indirect method. Under the indirect burden shifting method the employee must first demonstrate that he has made a prima facie case of age discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). If the employee satisfies the burden in setting forth a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to offer a legitimate non-discriminatory reason for the adverse action. If the employer fulfills this requirement, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual. *Pitasi*, 184 F.3d at 716.

To set forth a prima facie case of age discrimination, an employee must show: (1) he is over 40 years old; (2) that he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Pitasi*, 184 F.3d at 716. Where only one employee is eliminated,

the case is considered a mini reduction in force, or "mini-RIF." *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043 (7th Cir. 2000). In these cases, only one position is eliminated and the duties of that position are simply absorbed by other employees. *Id.* See also *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000)(calling this a "fungibility" situation). Further, in mini-RIF cases, the fourth prong is satisfied if the plaintiff was constructively replaced, meaning that his responsibilities were absorbed by employees not in the protected class. *Ritter*, 231 F.3d at 1043.

Franzoni argues that both the elimination of his job and his ultimate termination were discriminatory and based on his age. Regarding the elimination of his long term job, Franzoni has established the first three factors: he was over 40, his position was eliminated, and there were never any complaints made about his performance. Regarding the fourth prong, there is no evidence in the record that IBA hired anyone else to replace Franzoni, that Franzoni's job was absorbed by other employees, or that younger employees were treated more favorably. He has not submitted any evidence that the elimination of his position had any relation to his age.

Franzoni has the same problem regarding his termination from the Des Plaines facility. He has not set forth any evidence of similarly situated people not in the protected class. Whether this

case fits the mold as a "mini-RIF" or a "fungibility" case, and using the most liberal formulation of the forth prong, Franzoni must set forth some evidence that other employees were treated more favorably than he was. He has not done so.

Assuming that Franzoni had stated a prima facie case, he cannot demonstrate pretext. To show pretext, an employee must demonstrate that the employer offered phony reasons for the employment actions or did not believe the reasons it gave for the actions. *Ritter*, 231 F.3d at 1044. Pretext is not shown merely by demonstrating that the employer erred or exercised poor business judgment. *Id.* Hartmarx has set forth several business reasons for eliminating his position, including importantly that the only major customer still selling clothing using Franzoni's name had decided to stop using his name. Franzoni argues that from 1994 to the time of his termination sales of the clothing line that had used his name had not declined, even after they stopped using his name. While Franzoni may disagree with the business decision and believe that it was unwise, he has not set forth evidence that demonstrates that Hartmarx's reasons are phony or are a cover for age discrimination. It is well settled that courts do not reexamine business decisions. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986).

Regarding his ultimate termination at the Des Plaines facility, Hartmarx's stated reason for terminating Franzoni was

that Franzoni misrepresented his medical condition.  First, aside from Franzoni's arguments, there is no evidence in the record that Patel was any way involved in Franzoni's termination.  It was Robinson, after consulting with and obtaining authority from his superior, Hoffman, who terminated Franzoni.  Franzoni argues that he was involuntarily placed on medical leave and that he had requested to come back to work with a reasonable accommodation.  He further disputes that he was misrepresenting his medical condition. What the videotape actually showed and whether Franzoni really was misrepresenting his medical condition are not the issues here.  The relevant question is whether Robinson believed that Franzoni was misrepresenting his medical condition.  *O'Connor v. DePaul University*, 123 F.3d 665, 670.  Robinson knew that Franzoni was not showing up for work, and based on the videotape and other documents, he believed that Franzoni was misrepresenting his medical condition.  This Court has been shown no reason to believe that the HSM executives did not believe that they were firing Franzoni for lying to the company and not going to work.

Further negating a finding of pretext here is that Hoffman hired Franzoni when he was 71 years old, thirty-one years into the protected class.  This is further evidence that firing Franzoni was not due to his age.  *Ritter*, 231 F.3d at 1044, *citing Rand v. CF Indus., Inc.*, 42 F3d 1139, 1147 (7th Cir. 1994)("It seems rather suspect to claim that the company that hired [plaintiff] at age 47

had suddenly developed an aversion to older people two years later). Therefore, Franzoni's claim as to the second adverse action fails.

### Retaliation

To establish prima facie case of retaliation, Franzoni must demonstrate that: (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) a causal link exists between the protected expression and the adverse action. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998). If Franzoni succeeds in establishing a prima facie case, the burden shifts to Hartmarx to articulate a non-discriminatory reason for adverse action. If Hartmarx articulates reasons, the burden shifts back to Franzoni to demonstrate that the employer's proffered reasons are pretextual and that the actual reason was discriminatory or retaliatory.

Franzoni does not make his retaliation claim very clear. He appears to be arguing that giving him the quality assurance job at the Des Plaines facility constitutes retaliation for filing his discrimination charge, and that his termination was also in retaliation for his charge. Thus, in order to establish the "causal link" element of the prima facie case of retaliation, Franzoni must establish that the decision to give him the position at the Des Plaines facility and the decision to terminate him and his filing of the EEOC charges were not wholly unrelated. *Vanasco*,

137 F.3d at 969, *citing Hunt-Golliday v. Metropolitan Water Reclamation Dist. Of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997). Suspicious timing is evidence, but by itself not sufficient to demonstrate a causal link. The "mere fact that one event preceded another does nothing to prove that the first event caused the second." *Sauzek v. Exxon Coal USA Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation."). *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1009 (7th Cir. 2000)("the timing of an employee's discharge may be circumstantial evidence of a retaliatory motive").

Regarding his assignment to the Des Plaines facility, Franzoni filed a charge with the EEOC on June 5, 1998. He argues that less than 30 days after he filed the charge, he was informed that his marketing position had been eliminated and he was given a new position at the Des Plaines facility. Hartmarx argues that offering Franzoni the position at the Des Plaines facility cannot be considered an adverse employment action because Franzoni's previous job was eliminated and this was a new job offered to Franzoni because he still wanted to work. Hartmarx argues that Franzoni received the same salary and benefits at the new job and there is no evidence that any other jobs were available suitable for Franzoni.

Adverse employment action has been broadly defined in this circuit, and an action need not be easily quantifiable to be considered adverse. *McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996). "[A]dverse job action is not limited solely to loss or reduction of pay or monetary benefits." *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). Not everything that makes an employee unhappy, however, is an actionable adverse action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

While Franzoni's position was officially eliminated less than a month after he filed his charges, it is undisputed that the decision to eliminate his position occurred prior to his filing of charges and that Franzoni knew that Hartmarx was planning to eliminate his position months before it happened. The letter agreement that Conti sent to Franzoni five weeks prior to Franzoni's filing the charge with the EEOC stated that Franzoni's job was going to be eliminated. Thus, elimination of his position cannot be retaliatory. The evidence also demonstrates that when Patel found out that Franzoni still wanted to work, he asked Hoffman to find Franzoni a new job. Therefore, the job at the Des Plaines facility was an entirely new job where Franzoni received the same salary and benefits. The Court fails to see how offering Franzoni another job can constitute adverse employment action.

Regarding the termination, Franzoni satisfies the first two prongs of the prima facie case: he filed discrimination charges with the EEOC and he was terminated from his job at the Des Plaines facility. Franzoni filed the charges prior to the time he started the position at the Des Plaines facility, and he was terminated six months later. Franzoni fails to set forth evidence to demonstrate a causal link between the charges and the decision by Robinson and Hoffman to terminate him, and there is no evidence in the record that Patel was involved in that decision. Further, even if Franzoni could establish a causal link, as previously discussed, he cannot establish pretext.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: March 9, 2001